# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|                              |   |                |
|------------------------------|---|----------------|
| CASSELLI, ET AL.             | : |                |
|                              | : | CIVIL ACTION   |
| Plaintiffs,                  | : |                |
|                              | : | NO. 13-6279    |
| v.                           | : |                |
|                              | : |                |
| CITY OF PHILADELPHIA, ET AL.,| : |                |
|                              | : |                |
| Defendants.                  | : |                |

## MEMORANDUM

YOHN, J.                                                                September 22, 2014

      Plaintiffs Nicholas Casselli and Lawrence Love bring this 42 U.S.C. § 1983 claim, and related state law claims against the City of Philadelphia and Philadelphia police officers; state actions for malicious prosecution, defamation, and false light invasion of privacy against the American Postal Workers Union, AFL-CIO Philadelphia, PA Area Local ("APWU"), and APWU officials Gwen Ivey, Laura Tillery, and Frank Keenan; and a breach of contract claim against the APWU and the United States Postal Service.[1]

      Before me are defendants Ivey, Tillery, Keenan, and the APWU's ("defendants") motion to dismiss, plaintiffs' response, and defendants' reply.[2] For the reasons set forth below, I will deny defendants' motion to dismiss the claims for malicious prosecution and defamation as to Ivey, Tillery, Keenan, and the APWU; deny the motion to dismiss the claim for false light

---

[1] Plaintiffs' claim for breach of contract against the APWU and the United States Postal Service was dismissed by agreement of the parties on April 1, 2014.

[2] The City of Philadelphia, and the Philadelphia police officers named in the complaint are not involved in this motion.

invasion of privacy as to Ivey, Tillery, and the APWU; and grant the motion to dismiss the claim for false light invasion of privacy as to Keenan only.

## I. FACTS AND PROCEDURAL HISTORY

The complaint alleges that on June 27 of 2012 or 2013[3] the plaintiffs, former APWU officers, removed personal items from a filing cabinet at the APWU headquarters. Thereafter, defendants Ivey and Tillery accused the plaintiffs of stealing APWU documents from the filing cabinet. In response to these accusations, the United States Postal Service ("USPS"), including the USPS "internal police force," conducted an investigation and determined that the incident should be handled as "an internal postal service matter" and that there was "no evidence" requiring referral to Philadelphia police for criminal investigation.

Despite this finding by the USPS police, defendants Ivey and Tillery pursued criminal charges against the plaintiffs. The complaint alleges that in the pursuit of these charges Ivey, Tillery, and Keenan all made false statements to Philadelphia police regarding the alleged theft of APWU documents. The plaintiffs were arrested and charged with theft, receiving stolen property, and conspiracy for theft. The Philadelphia Municipal Court dismissed the charges for lack of jurisdiction because the alleged crime occurred on federal property.

At various points throughout their complaint the plaintiffs allege that Ivey and Tillery: "have persisted in a pattern of telling numerous [APWU] officials and [APWU] members at [p]lantiffs' place of employment, and within their union, that they have committed crimes, including theft and burglary and breaking and entering"; have made false statements about the

---

[3] It is not clear from the plaintiffs' complaint what year the events at issue in this case arose. The complaint alleges some events occurring in the summer of 2013 (see Compl. ¶¶ 13, 14), but alleges other events that would have occurred chronologically after the 2013 events as occurring in the summer of 2012 (see Compl. ¶¶ 19, 21, 23). The plaintiffs' response to the motion to dismiss does not help to clear up this discrepancy as it also uses the years 2012 and 2013 interchangeably. As I can only guess at the year the events occurred, and it appears critical events occurred in a single year, I will use only the month and day for any further date references.

2

plaintiffs at four APWU meetings between November 1, 2012 and August 23, 2013; have slandered and libeled the plaintiffs as criminals; have acted with malice to harm the plaintiffs' personal and professional reputations out of a personal animus; have "stated and documented that the [APWU membership] accepted and approved three judicial decisions regarding charges against [p]laintiffs…for 'taking and destroying [APWU] records on June 27, 2012'" despite knowing the statement "was materially false"; and have "orchestrated the writing and production of a flyer that was disseminated at [p]laintiffs' place of employment.

Based on these facts, the plaintiffs filed a complaint in this court raising claims for malicious prosecution, defamation, and false light invasion of privacy against Ivey, Tillery, Keenan, and the APWU. Casselli also brought a claim for breach of contract against the APWU and the USPS.[4] On January 2, 2014, defendants Ivey, Tillery, Keenan, and the APWU moved to dismiss the claims against them for malicious prosecution, defamation, false light invasion of privacy, and breach of contract. On January 24, 2014, plaintiffs responded to the motion to dismiss with a memorandum of law which, at 49 pages, exceeded the 25 page maximum for the memorandum as outlined in the court's scheduling order. On March 26, 2014, I ordered that the plaintiffs' response be stricken without prejudice to the plaintiffs' filing an amended response not to exceed 35 pages. On March 31, 2014, the plaintiffs filed an amended response. On April 1, 2014, I dismissed the breach of contract claim against the APWU and the USPS by stipulation of the parties. On April 7, the defendants replied to the plaintiffs' response to the motion to dismiss.

## II. STANDARD OF REVIEW

---

[4] The plaintiffs also raised claims related to their arrest and detention against the City of Philadelphia, and various Philadelphia police officers, who are not parties to this motion to dismiss, for the deprivation of their Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983 and common law assault, battery, malicious prosecution, and false imprisonment.

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. "[U]nder Rule 12(b)(6) the defendant has the burden of showing no claim has been stated." *Kehr Packages, Inc. v. Fidelcor*, 926 F.2d 1406, 1409 (3d Cir. 1991). In deciding a motion to dismiss, courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice. *Id.* "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips*, 515 F.3d at 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

When faced with a motion to dismiss, "courts generally consider only the allegations in the complaint, exhibits attached to the complaint[,] and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). However, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Id.* As the Third Circuit explained, "[t]he rationale underlying this exception is that the primary problem raised by looking to the documents outside the complaint—lack of notice to the plaintiff—is

4

dissipated where the plaintiff has actual notice…and has relied upon these documents in framing the complaint." *In re Burlington Coat Factory Sec. Lit.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations omitted).

### III. DISCUSSION

**A. The Norris-La Guardia Act and the Pennsylvania Labor Anti-Injunction Act**

As an initial matter, the defendants argue that all charges against the APWU should be dismissed pursuant to both Section 6 of the Norris-La Guardia Act, 29 U.S.C. § 106 and Pennsylvania's Labor Anti-Injunction Act, 43 P.S. § 206h.

Under Section 6 of the Norris-La Guardia Act "no association or organization participating in a labor dispute, shall be held responsible or liable in any court of the United States for the unlawful acts of individual officers, members, or agents, except upon clear proof of actual participation in, or actual authorization of, such acts, or of ratification of such acts after actual knowledge thereof." 29 U.S.C. § 106. The Norris-La Guardia Act defines a labor dispute as "any controversy concerning terms or conditions of employment, or concerning the association of representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer or employee." 29 U.S.C. § 113.

The defendants argue that the APWU cannot be held liable because the complaint does not allege that it participated in, authorized or ratified the acts alleged in the complaint. However, by the plain language of the statute, Section 6 applies only to claims involving a labor dispute. As the complaint does not allege that the claims at issue in this case involve a controversy or negotiation concerning the terms or conditions of employment, they do not involve a labor dispute as defined in the statute. To support their argument, the defendants cite a

single case involving criminal actions arising from a picket line. *Gajkowski v. Internat'l Bro. of Teamsters*, 548 A.2d 533 (Pa. 1988). This case is inapposite as a picket line involves a "controversy concerning terms or conditions of employment." As the defendants cite no cases that support their argument, I am guided by the clear language of the Norris-LaGuardia Act, including its definition of labor disputes, and decline to apply it to claims that do not involve labor disputes.

The language in the Pennsylvania Labor Anti-Injunction Act tracks nearly identically to the Norris-LaGuardia Act. "No…association or organization participating or interested in a labor dispute, as herein defined, shall be held responsible or liable in any civil action at law or suit in equity…for the unlawful acts of individual officers, members or agents, except upon proof…by the weight of evidence in other cases, and without the aid of presumptions of law or fact, both of—(a) the doing of such acts by persons who are officers, members or agents of any such association or organization; and (b) actual participation in, or actual authorization of, such acts, or ratification of such acts after actual knowledge thereof by such association or organization." 43 P.S. § 206h. And labor dispute is defined within the Labor Anti-Injunction Act as "any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment or concerning employment relations or any other controversy arising out of the respective interests of employer and employee, regardless of whether or not the disputants stand in proximate relation of employer and employee, and regardless of whether or not the employees are on strike with the employer." 43 P.S. § 206c. Again, the only case cited by defendants in support of their argument is inapposite as it involved criminal actions arising from a labor dispute, namely a picket line. *Gajkowski*, 548 A.2d at 533.

6

In the absence of any further authority, I am guided by the clear language of the Pennsylvania Labor Anti-Injunction Act which applies only to labor disputes.

As neither Section 6 of the Norris-LaGuradia Act nor the Pennsylvania Anti-Injunction Act applies to the claims at issue in this case, the plaintiffs need not allege, as the defendants argue, that there is clear proof of actual participation in, or actual authorization of, the acts alleged, or ratification of such acts after actual knowledge thereof by the APWU.  I will therefore deny the motion to dismiss the APWU under both acts.

**B. Preemption**

The defendants argue that plaintiffs' claims should be dismissed because they are preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.[5]

Under § 301 of the LMRA "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce…may be brought in any district court of the United States having jurisdiction of the parties."  29 U.S.C. § 185(a). Congress's purpose in enacting § 301 of the LMRA was to create a uniform doctrine of federal labor law because "the subject matter of § 301(a) is peculiarly one that calls for uniform law." *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103 (1962) (quoting *Pennsylvania R. Co. v. Public Service Comm'n*, 250 U.S. 566, 569 (1919) (internal quotations omitted).  As the Supreme Court explained, because individual contract terms could have different meanings under state and federal law, "the process of negotiating an agreement would be made immeasurably more difficult by the necessity of trying to formulate contract provisions in such a way as to contain the same meaning under two or more systems of law which might someday be invoked in

---

[5] In their motion to dismiss, the defendants also discuss preemption under the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151, *et seq.*  However, the defendants argue that the breach of contract claim, alone, is preempted by the NLRA.  As the breach of contract claim has since been dismissed by agreement of the parties, the defendants' NLRA preemption argument is now moot.

enforcing the contract." *Lucas Flour Co.*, 369 U.S. at 103-04.  The need for "interpretive uniformity and predictability," therefore, requires that "labor contract disputes be resolved by reference to federal law and "the meaning given a contract phrase or term be subject to uniform federal interpretation." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985).  Thus, "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract,[6] that claim must either be treated as [an LMRA] claim…or dismissed as preempted by federal-labor contract law." *Id.* at 220 (citing *Avco Corp. v. Aero Lodge 735*, 390 U.S. 557 (1968).

However, the LMRA only pre-empts state law claims that require the interpretation of the labor agreement, and "says nothing about the substantive rights…when adjudication of those rights does not depend upon the interpretation of such agreements." *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 408-09 (1988).  As the Supreme Court has cautioned "not every dispute…tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301." *Id.* at 413 (quoting *Lueck*, 471 U.S. at 211) (internal quotations omitted).  The fact that a CBA or a union constitution is "part of the context" in which a plaintiff's claim must be addressed does not "trigger complete preemption in the absence of some substantial dispute over the meaning of the collective bargaining agreement." *Kline v. Sec. Guards, Inc.*, 386 F.3d 246, 257 (3d Cir. 2004).  Thus, the LMRA does not pre-empt "state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Lueck*, 471 U.S. at 212.

1. <u>Preemption: Malicious Prosecution</u>

---

[6] For the purposes of preemption, "labor contracts" include union constitutions.  *See Lewis v. Int'l Bhd. of Teamsters*, 826 F.2d 1310, 1314 (3d Cir. 1987) (holding that a federal court has jurisdiction under § 301 for suits brought for violating the union constitution)

The defendants argue that the plaintiffs' malicious prosecution claim is preempted by the LMRA because the court's analysis necessarily substantially relies on the Constitution of the American Postal Workers Union Philadelphia PA Area Local, AFL-CIO ("APWU Constitution").[7] Specifically, the defendants argue that the "plain language" of the APWU Constitution "requires officers to surrender their files when they leave office and charges the Union President with ultimate responsibility for maintenance of those files." Therefore, according to the defendants, the malicious prosecution claim turns on whether they "had an obligation in accordance with the [APWU Constitution] to take action regarding the taking and destruction of documents from the Union Office." And the determination of that question "becomes a matter of interpretation of the [APWU Constitution]" and therefore "completely preempted under [the LMRA]." The defendants' argument is unavailing.

To state a cause of action for malicious prosecution, the plaintiffs must allege that the defendants instituted proceedings against the plaintiffs (1) without probable cause, (2) with malice, and (3) the proceedings terminated in plaintiff's favor. *Kelley v. General Teamsters, Local Union 249*, 544 A.2d 940, 941 (Pa. 1988). Here, to support their claim for malicious prosecution, the plaintiffs allege that, outside of any disciplinary proceedings within the APWU, each of the individual defendants, knowing that the plaintiffs had not stolen any APWU documents, made false statements to police in an attempt to institute criminal prosecutions. The complaint further alleges that the defendants were motivated to make the false statements by

---

[7] I may consider the APWU Constitution because it is an undisputedly authentic document the defendants attached to their motion to dismiss and upon which at least some of the plaintiffs' claims are based. *Pension Benefit Guar. Corp.*, 998 F.2d at 1196. While the bulk of the complaint seems to focus on alleged statements made outside the disciplinary proceedings as outlined in the APWU Constitution, the complaint does allege that defendants made false statements at a general membership meeting at which time the membership accepted and approved three judicial decisions regarding charges against the plaintiffs. See Compl. ¶¶ 60-61. As such allegations appear to implicate the process as outlined in the APWU Constitution, and as plaintiffs are not harmed by my review of the APWU Constitution, I will consider and reference the document throughout this memorandum.

"their stern opposition to what they believed to be [the plaintiffs'] failed leadership of the Union." Finally, the complaint alleges that the proceedings terminated in the plaintiffs' favor.

The plaintiffs' claim for malicious prosecution does not challenge the defendants' right or authority, as conveyed by the APWU Constitution, to investigate any alleged theft of APWU documents. Rather, the claim alleges that the defendants pursued state criminal prosecutions despite knowing that the plaintiffs had not committed any crimes. None of the elements necessary to establish malicious prosecution requires the court to even consider, let alone substantially analyze, the terms of the APWU Constitution. They are "purely factual inquir[ies]" that do "not turn on the meaning of any provision of [the APWU Constitution]." *Lingle*, 486 U.S. at 407. While the APWU Constitution may have obligated the defendants to investigate whether the plaintiffs had improperly taken APWU documents, as the defendants argue in their memorandum, it did not grant the defendants license to maliciously pursue criminal prosecution in violation of state law. As the plaintiffs' right to be free from malicious prosecution does not arise from any of the rights conveyed by the APWU Constitution, the malicious prosecution claim is not preempted by the LMRA. *See Lueck*, 471 U.S. at 212 ('[I]t would be inconsistent with congressional intent under [the LMRA] to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.')."

Accordingly the defendants' motion to preempt the malicious prosecution claim under the LMRA will be denied.

2. Preemption: Defamation

The defendants next argue that the plaintiffs' defamation claim is preempted by the LMRA because the court's analysis necessarily relies on the APWU Constitution. Specifically, the defendants argue that the constitution requires the APWU's executive board to record in

10

writing any charges against members, the verdict, and any recommended disciplinary action. The executive board must then submit the report to the local union's secretary who must read the report at the next regular union meeting. Thereafter, the question of guilt and any recommended punishment is submitted to the union membership. Given this authority and privilege granted by the AWPU Constitution, the defendants argue the claim for defamation stemming from any statements made related to the charges is preempted.

To state a cause of action for defamation under Pennsylvania law, a plaintiff must prove: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion. 42 Pa. C.S.A. § 8343(a). See also *In re Philadelphia Newspapers, LLC*, 690 F.3d 161, 173-74 (3d Cir. 2012) (applying Pennsylvania defamation law). When a defamation claim is properly raised, the defendant, in contrast, has the burden of proving: (1) the truth of the defamatory communication; (2) the privileged character of the occasion on which it was published; and (3) the character of the subject matter of defamatory comments as of public concern. 42 Pa. C.S.A. § 8343(b). Statements made in the context of management-level communications regarding job performance or disciplinary investigations have been found to enjoy this conditional privilege. *See, e.g., Sangmeister v. Airborne Express, et al.*, 2001 U.S. Dist. LEXIS 13466 at *12-13 (E.D. Pa. August 30, 2001) (citing *Peek v. Philadelphia Coca-Cola Bottling Co.*, 1997 U.S. Dist. LEXIS 1038 at *8 (E.D. Pa. July 10, 1997)). The scope of the conditional privilege depends on the "employer's authority under the CBA, and liability under the state law would thus require an interpretation of the CBA." *Sangmeister*, 2001 U.S. Dist.

LEXIS 13466 at *13.  Accordingly, courts have held that a defamation claim arising from statements made in the course of a grievance or disciplinary proceeding is preempted because it requires an examination and interpretation of the CBA to determine the scope of any conditional privilege.  *Id.*  However, a defamation claim arising from statements made outside such proceedings is not preempted because no examination of the scope of the conditional privilege is required.

In their memorandum, the defendants argue that, similar to an employer's conditional privilege for statements made in the context of a disciplinary proceeding as outlined by the CBA, there exists a conditional privilege for statements made by union officers in the context of a disciplinary proceeding as outlined in a union constitution.  Thus, any statements made to which such privilege would attach requires an examination of the constitution to determine the scope of the privilege and, therefore, should be preempted.  Given the Third Circuit's holding that, for the purposes of preemption, "labor contracts" include union constitutions, *Lewis*, 826 F.2d at 1314, I agree with the defendants that any statements made in the context of any disciplinary proceeding permitted by the APWU Constitution requires an interpretation of the constitution to determine the scope of the conditional privilege and is, therefore, preempted.

The APWU Constitution outlines a procedure whereby charges may be filed with the secretary, who is then required to forward the charges to the charged party.  Defs.' Ex. A at 46.  The accused is then granted a trial in which a hearing officer may be appointed to make findings of fact and conclusions of law, and will recommend to the trial board what disciplinary action is to be taken.  *Id.* at 46-47.  The trial board makes the ultimate disposition of the charges.  *Id.* at 47.  Finally, the trial board's disposition of the charges along with the recommended disciplinary action must be reduced to writing and submitted to the secretary of the local union, who must

then read the report at the next regular union meeting. *Id.* at 48. The Secretary must then submit the question of guilt or innocence to the union membership. *Id.* If guilt is determined then the question of accepting or rejecting the trial board's disciplinary action is likewise submitted to the union membership. *Id.*

The complaint alleges that the defendants made numerous statements of a defamatory character stemming from their accusations against the plaintiffs, including: sending a letter to the APWU executive board and legal counsel accusing the plaintiffs of theft; accusing the plaintiffs of theft to USPS management, the USPS Inspection Department, and APWU officials and members, including at four APWU meetings between November 1, 2012 and August 23, 2013; giving a defamatory and false statement to Philadelphia police; and writing and disseminating flyers containing defamatory statements at plaintiffs' place of employment. Both the plaintiffs and the defendants fail to delineate precisely which statements were made in the context of the union disciplinary proceedings and which were not. However, it seems clear that at least some of the alleged defamatory statements—specifically, the statements in the flyers and the statements made to Philadelphia police—fall well outside the disciplinary procedures outlined in the APWU Constitution. Moreover, while the constitution outlines a procedure where the disciplinary findings are submitted at "the next regular union meeting" for approval by the union membership, the complaint alleges that defendants made defamatory statements at four meetings between November 1 and August 23.

While the plaintiffs' complaint fails to clearly distinguish the statements made in the course of disciplinary proceedings from those made outside such proceedings, it is evident that at least some of the alleged defamatory statements fall outside the APWU's disciplinary proceedings as outlined in the APWU Constitution. Thus, based on at least some of the factual

allegations raised in the complaint, the plaintiffs have stated a plausible claim for defamation that does not require an interpretation of the APWU Constitution. As a plausible claim has been stated, I will not dismiss at this early stage, and will allow the parties to develop a more specific factual record through discovery to determine which statements were made in the course of the disciplinary proceeding, and therefore require interpretation of the APWU Constitution, and which were not. The parties may address the issue again at summary judgment or at trial.

Accordingly the defendants' motion to preempt the defamation claim under the LMRA will be denied. [8]

3. Preemption: False Light Invasion of Privacy

The defendants next argue that the plaintiffs' false light invasion of privacy claim is preempted by the LMRA because the court's analysis necessarily relies on the APWU Constitution. Similar to the defamation claim, the defendants argue that any statements stemming from the charges raised against the plaintiffs are privileged and therefore preempted by the LMRA.

Pennsylvania has adopted the Restatement (Second) of Torts, which defines false light invasion of privacy as:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and

---

[8] The defendants also argue that the plaintiffs have failed to exhaust internal remedies and, therefore, may not amend their complaint to raise a federal cause of action. As I will not dismiss the state claim under preemption, and the plaintiffs have not sought to amend their complaint to raise a federal cause of action, I will not address the defendants' exhaustion argument.

14

>   (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Restatement (Second) of Torts § 652E; *see also*, *Doe v. Wyoming Valley Health Care System, Inc.*, 987 A.2d 758, 765 (Pa. Super. 2009) (applying the Restatement to false light invasion of privacy claim).  The Restatement (Second) of Torts adopts both the absolute and conditional privileges outlined under its defamation provisions, §§ 652 F-G, including a privilege where (a) the matter is published upon an occasion that makes it conditionally privileged, and (b) the privilege is not abused, § 593.

      Similar to the defamation claim, the defendants argue that the false light invasion of privacy claim requires the court to interpret the APWU Constitution to determine the scope of the privilege covering the alleged statements.  However, the defendants point to no caselaw showing that Pennsylvania has adopted a conditional privilege for a false light invasion privacy claim, similar to the conditional privilege defense for a defamation claim, for statements made in the context of management-level communications regarding job performance or disciplinary investigations.  The single case the defendants cite in support of their argument, *Shanefelter v. United States Steel Corp.*, 784 F. Supp.2d 550, 561 (W.D. Pa. 2011), is a Western District of Pennsylvania case that analyzed an intentional misrepresentation claim, not a false light invasion of privacy claim.  As I could find no cases in which Pennsylvania extended a conditional privilege for statements made in the context of management-level communications to a false light invasion of privacy claim, I see no reason to do so here.

      However, if I were to extend such a privilege, similar to my analysis in the defamation claim, at the very least the dissemination of a flyer containing false statements would fall outside

the disciplinary proceedings outlined in the APWU Constitution, and would not require the court to interpret the constitution in order to analyze a false light invasion of privacy claim.

Accordingly, the defendants' motion to preempt the false light invasion of privacy claim under the LMRA will be denied.

## C. Failure to State a Claim

1. <u>Failure to State a Claim: Malicious Prosecution</u>

Defendants argue that the plaintiffs fail to state a claim for malicious prosecution as a matter of law because "the report"[9] was privileged rather than malicious. In response, the plaintiffs do not appear to address the argument regarding privilege, arguing instead that their complaint adequately alleges the facts necessary to establish the elements for malicious prosecution.

To state a claim for malicious prosecution, the plaintiffs must allege that the defendants instituted proceedings against the plaintiffs (1) without probable cause, (2) with malice, and (3) the proceedings terminated in plaintiff's favor. *Kelley v. General Teamsters, Local Union 249*, 544 A.2d 940, 941 (Pa. 1988). Probable cause is defined as "a reasonable ground of suspicion supported by circumstances sufficient to warrant an ordinary prudent man in the same situation in believing that the party is guilty of the offense." *Id.* at 942 (citing *Miller v. Pennsylvania R.R. Co.*, 89 A.2d 740, 743 (1954)).

In their memorandum, the defendants argue that the plaintiffs failed to state a claim for malicious prosecution because "the report was privileged rather than 'malicious' as a matter of law." To support this argument the defendants cite Pennsylvania caselaw that quotes the Restatement of Torts (2d), Section 653, comment g for the "rule exonerating an honest

---

[9] While not explicitly stated, I interpret the defendants' reference to "the report" at p. 21 of their memorandum to refer to the police report the defendants made accusing the plaintiffs of theft, and their statements made related to that report.

informer." See Pl. Mem. 21-22 (citing *Jaindl v. Mohr*, 637 A.2d 1353, 1356-57 (Pa. Super. 1994)). However, the J*aindl* court's discussion to which the defendants cite related to a negligence claim in the context of the procurement of criminal proceedings, not a malicious prosecution claim. *Jaindl*, 637 A.2d at 1356. The *Jaindl* court adopted Superior Court precedent refusing to recognize a cause of action for negligent identification of another as a perpetrator of a crime. *Id.* As the court reasoned, "the public interest in investigation of a crime outweighs the recognition of a negligence action for negligent identification of a suspect." *Id.*

The *Jaindal* court's reasoning is inapposite to the malicious prosecution claim raised by the plaintiffs. The *Jaindl* court extended the honest informer privilege to an honest, but mistaken, informer in a negligence claim. Here, the plaintiffs allege that defendants were malicious, not merely negligent (and certainly not honest), in pursuing criminal charges. Specifically, the plaintiffs allege that all three of the named defendants, Ivey, Tillery, and Keenan, made false statements to police, which they knew to be false. The defendants do not argue that the *Jaindl* court's reasoning in its analysis of a negligent procurement of criminal proceedings claim should be extended to a malicious prosecution claim, and I see no reason for doing so. Moreover, the *Jaindl* court also considered a malicious prosecution claim without itself extending this honest informer privilege to the claim. *Id.* at 1357-58. Accordingly, I decline to extend the honest informer privilege on which the defendants base their failure to state a claim argument.

As the defendants do not argue that the plaintiffs' complaint fails to allege facts sufficient to meet each of the elements of malicious prosecution, the motion to dismiss the malicious prosecution claim will be denied.

   2. <u>Failure to State a Claim: Invasion of Privacy</u>

Finally, the defendants argue that the plaintiffs fail to state a claim for false light invasion of privacy.

As addressed above, to state a claim for false light invasion of privacy the plaintiffs must allege that the defendants gave publicity to a matter concerning the plaintiffs that placed the plaintiffs before the public in a false light; that the false light in which plaintiffs were placed would be highly offensive to a reasonable person; and that the defendants knew of or acted in reckless disregard to the falsity of the publicized matter. *Doe*, 987 A.2d at 765. The interest protected by false light invasion of privacy "is the interest of the individual in not being made to appear before the public in an objectionable false light." *Curran v. Children's Sevice Center of Wyoming County, Inc.*, 578 A.2d 8, 12 (Pa. Super. 1990) (internal quotations and citations omitted). Thus, "publicity" differs from the "publication" required in connection with defamation liability. *Id.* Publicity under false light invasion of privacy requires that the "matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Id.*

In their memorandum, the defendants argue that because the plaintiffs failed to allege that any statements were made outside of the confines of the workplace, the complaint fails to state a claim for false light invasion of privacy.[10] To support this argument, the defendants cite *Sangmeister*, 2001 U.S. Dist. LEXIS 13466 and *Wright v. Pepsi Cola Co.*, 243 F. Supp. 2d 117, 123 (D. Del. 2003), neither of which addresses a false light invasion of privacy claim, let alone discusses the publicity element for such a claim. Certainly no cases cited by the defendants stand for the proposition that statements made in the confines of the workplace are not

---

[10] The defendants also appear to raise the privilege discussion addressed above in the preemption section for false light invasion of privacy. However, as discussed above, the defendants fail to cite any caselaw, and I could not find any caselaw where Pennsylvania extended the conditional privilege for statements made in the context of management-level communications regarding job performance or disciplinary investigations to false light invasion of privacy. Accordingly, I decline to extend that privilege here.

sufficiently public to raise a false light invasion of privacy claim, and I decline to impose such a requirement as a matter of law.

The complaint alleges that defendants Ivey and Tillery made numerous false statements to "numerous [APWU] officials and [APWU] members"; that statements were made at four separate APWU membership meetings between the months of November and August; and that Ivey and Tillery wrote and disseminated flyers at plaintiffs' workplace that contained false statements. The complaint alleges that numerous people were exposed to these false light statements and, therefore, alleges facts sufficient to establish for purposes of surviving a motion to dismiss the publicity element for a false light invasion of privacy claim against Ivey and Tillery. Based on these factual allegations the plaintiffs have raised a plausible claim for false light invasion of privacy against defendants Ivey, Tillery, and, through them, the APWU. The parties may develop a more specific factual record through discovery to determine the number of people to whom false light statements were made as it relates to the publicity element of the claim, and may address the issue again at summary judgment or trial, if necessary.

However, the complaint fails to allege the facts necessary to state a claim for false light invasion of privacy against defendant Keenan. The complaint merely alleges that Keenan made false light statements to police officers, and does not implicate Keenan in any of the statements made to "numerous [APWU] officials and [APWU] members," or any of the statements made at APWU membership meetings. The complaint fails to allege the facts necessary to establish that Keenan's false light statements were made to "the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Thus, the complaint fails to allege the facts necessary to establish the publicity element for a false light invasion of privacy claim as to Keenan.

The defendants further argue that insofar as the plaintiffs' claim for false light invasion of privacy depends on statements made in the flyer related to Casselli's criminal background, the statement is true and accurate. While it is clear that Casselli[11] does have a criminal record, and therefore the alleged statement in the flyer that he is an "ex-convict" is not false, there are statements alleged in the flyer that go beyond Casselli's criminal record—namely, a statement that Casselli "should not be allowed to work at the Post Office let alone around normal citizens." Moreover, as discussed above, in addition to the flyer, the plaintiffs' claim for false light invasion of privacy is based on statements Ivey and Tillery made to "numerous" persons.

Accordingly, the motion to dismiss the false light invasion of privacy claim will be denied as to Ivey, Tillery, and the APWU and granted as to Keenan.

## IV. CONCLUSION

For the forgoing reasons, I will grant the motion to dismiss the claim for false light invasion of privacy against Keenan only, and deny the balance of the motion. An appropriate order follows.

---

[11] I may consider Casselli's criminal record as it is a public record.