IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NICHOLAS CASSELLI, et al.    :
             :     CIVIL ACTION
    v.        :     NO. 13-6279
             :
CITY OF PHILADELPHIA, et al.   :

O'NEILL, J.                  October 18, 2016

## MEMORANDUM

   Plaintiffs bring a number of claims based on their arrest and unsuccessful prosecution for theft of union property.  Dkt. No. 60 (Pls.' Am. Compl.).  The defendants remaining in this action—the City of Philadelphia, Officer Stephen Reeder and Detective Gregory Holman[1]—move for summary judgment on all of plaintiffs' claims, Dkt. No. 94, and plaintiffs respond. Dkt. No. 97.  Because plaintiffs do not support their claims of denied medical treatment or excessive force or those against the City of Philadelphia, I will grant summary judgment for defendants on those claims.  I will also grant summary judgment for defendants on plaintiffs' claims of false arrest and false imprisonment under federal law.  The evidence does not support these claims because it shows that neither individual defendant, Detective Holman or Officer Reeder, omitted material information from the warrant application with reckless disregard for the truth.  Lastly, I will grant summary judgment for defendants on plaintiffs' various state law claims.

---

[1] Plaintiffs' claims against the following defendants have been dismissed: Mark Renzi (dismissed, Dkt. No. 41), Detective Brown (dismissed, Dkt. No. 77), other "currently unnamed and unknown police officers" (dismissed, Dkt. No. 61), the American Postal Workers Union of Philadelphia, Gwen Ivey, Laura Tillery and Frank Keenan (dismissed, Dkt. No. 93) and the United States Postal Service (dismissed, Dkt. No. 25).

## BACKGROUND

Following are the facts in the light most favorable to plaintiffs.

### I.     Events at the Steward's Office

Rising political tensions at the American Postal Workers' Union (APWU) between two factions preceded an incident in which members of the outgoing union management who were still in power accused members of the newly elected slate—plaintiffs Nicholas Casselli and Lawrence Love—of stealing files from the union steward office.  All of the events took place at the Lindbergh Postal Facility, a federal building in Philadelphia.

Mr. Casselli, the union's president-elect, called Mr. Love on June 27, 2012, to ask for access to Mr. Love's old filing cabinet in the steward office.  Dkt. No. 94-3 (Love Dep.) at 19:18–20:5.  Mr. Casselli wanted to pick up records of fantasy football pools he had left there during Mr. Love's tenure as a union steward.  Dkt. No. 94-2 (Casselli Dep.) at 23:13–17.  Mr. Love no longer had a key to the office because several months earlier he had resigned from his union post following a disagreement with the outgoing union president, Gwen Ivey.  Love Dep. 9:1–14.  So Mr. Love contacted John McKeown, a union steward, who let the two men into the office.  Id. at 19:21–20:1.  When they entered, they saw their longtime coworker, Frank Keenan. Id. at 20:9–12.  They said hello and told him they were taking "information" out of the filing cabinet.  Id.  Mr. Love removed the records and handed them to Mr. Casselli.  Id. at 21:1–2.  Mr. Casselli left and Mr. Love and Mr. Keenan had a "general conversation" as they too left the office.  Id. at 21:1–9.

Mr. Keenan reported the incident quite differently, first to union management, then in an interview with the police.  He said he saw Mr. Love take grievance documents out of the filing cabinet and hand them to Mr. Casselli.  Dkt. No. 94-10 (Investig. Interview R. with Frank

2

Keenan, Jul. 31, 2012) at ECF p. 1.  When he asked them what they were doing they responded, "Don't worry Frank, you won't be around in two years."  Id.  Presumably, this referenced plaintiffs' elected status and plans to change union management when they assumed power.  Mr. Keenan noted that grievance documents contain union members' social security numbers, addresses, and phone numbers.  Id. at p. 2.  He explained that as he left, he told Mr. Love that Mr. Casselli should not have taken the documents.  Mr. Love again told him not to worry about it.  Id. at p.1.  Mr. Keenan called the union's main office as soon as he got home to notify management of what he had seen.  Id.  The next day, Laura Tillery, then the filing cabinet's owner, showed him that the cabinet's lock was broken.  Id. at p. 1-2.

## II.    Criminal Investigation

After receiving Mr. Keenan's call, union management asked for statements from both Mr. Casselli and Mr. Love.  Casseli Dep. 28:22–24.  Postal police searched Mr. Casselli's locker for the grievance documents and found nothing.  Id. at 29:19–23.  Mr. Casselli and Mr. Love believe the postal police and the Postal Office of the Inspector General made no findings against them.  Id. at 32:22–25; Love Dep. 22:5–23:13.

A couple weeks later, Officer Stephen Reeder responded to a radio call for a burglary at the Lindbergh facility.  Dkt. No. 94-1 (Defs.' Stat. of Undisp. Facts) at ECF p. 2 ¶ 9.  When he arrived, he met Ms. Ivey and Ms. Tillery, who told him that Mr. Casselli and Mr. Love had taken union documents out of the steward office and Mr. McKeown was a witness.  Id. at ¶¶ 11-12.  Officer Reeder asked to speak with Mr. McKeown, Mr. Casselli or Mr. Love, but none were available.  Dkt. No. 94-4 (Reeder Dep.) at 10:15–24, 11:14–12:2.  He then prepared a 75-49 report and left it with the desk detective in the Southwest Detectives Division.  Dkt. No. 94-1 at ECF p. 2–3 ¶¶ 13, 14; Dkt. No. 97 at ECF p. 158 (Pls.' Ex. K).

The Detectives Division assigned Detective Gregory Holman to the case.  Dkt. No. 94-1 at ECF p. 3 ¶¶ 15, 16.  He and Detective Gina Chestang interviewed Ms. Ivey, Ms. Tillery, Mr. McKeown, Mr. Keenan, and Mark Reeves, the APWU vice president.  Id. at ¶¶ 16–23.  All the interviewees were members of the outgoing rival union slate except Frank Keenan, who was not one of Ms. Ivey's close friends; rather, he was friends with Mr. Casselli.  Casselli Dep. 48:21–25.

All the interviewees retold Frank Keenan's story.  Dkt. No. 94-6; Dkt. No. 94-7; Dkt. No. 94-12; Dkt. No. 94-8.  Two also provided Mr. Casselli's and Mr. Loves' explanation: Mark Reeves said Mr. Casselli claimed to have taken only documents containing football pools and to have immediately destroyed them, and Mr. McKeown reported the same explanation.  Dkt. No. 94-12; Dkt. No. 94-8 at ¶ 4.  Mr. McKeown also told Detective Holman the cabinet's lock had always been broken as far as he knew.  Id. at ¶ 7.

Detective Holman did not interview Mr. Casselli or Mr. Love and did not recall why. Dkt. No. 94-5 (Holman Dep.) at 30:10–25.  He was unaware that there was political conflict between Mr. Casselli, Mr. Love and the union management.  Id. at 30:1–9.  He did not attempt to find the allegedly stolen documents because he "had no information to track down this paperwork."  Id. at 32:23–24.  He did not discover that grievance documents do not contain social security numbers, contrary to statements by Mr. McKeown and Mr. Keenan.  Casselli Dep. 28:10–16.  He did not discover that the postal police had not uncovered evidence in their investigation of the incident.

When Detective Holman visited the Lindbergh facility, postal police officers escorted him off the premises.  Holman Dep. 24:2–20.  He did not recall whether he saw the steward's

4

office before he was escorted out, but he reviewed photographs of the filing cabinet.  Id. at

23:17–22.  In the photographs, he observed a broken lock.  Id. at 36:15–25.

## III.      The Warrant Application and Prosecution

Detective Holman submitted a warrant application for Mr. Casselli's and Mr. Love's

arrest for theft and related charges.  In the affidavit of probable cause he summarized the

interviews he conducted.  Dkt. No. 94-14; Dkt. No. 94-15.  He included Mark Reeves's retelling

of Mr. Casselli's explanation.  Dkt. No. 94-14.

The affidavit included little information about the filing cabinet's lock.  Detective

Holman did not mention viewing photographs of the lock and the only information he included

that suggested the men broke into the cabinet was Ms. Tillery comment that Mark Reeves was

"the only person besides her who has access" to the cabinet.  Id.  He left out both Mr. Keenan's

description of seeing the broken lock the day after the incident and Mr. McKeown's comment

that the filing cabinet's lock had been broken for some time before the day in question.  Id.

A warrant for plaintiffs' arrest was issued[2] and officers arrested Mr. Casselli at the end of

his shift at the Lindbergh facility.  Casselli Dep. 38:23–39:23.  Mr. Love turned himself in.  Dkt.

No. 94-1 at ECF p. 4 ¶¶ 26, 27.  During Mr. Casselli's night in jail, two other men in his cell

fought.  They "came crashing into" him.  Casselli Dep. 44:3.  He called for the turnkey but no

one came.  Id. at 44:7–9.  Mr. Casselli did not know the name of the officer operating the cell

room and he has not been made a party in this action.  Id. at 44:10–12.

---

[2] Neither party presents evidence as to which judge or which court issued the warrant.
Presumably, based on the Philadelphia Police Department Arrest Reports of Nicholas Casselli
and Lawrence Love, Dkt. No. 97 at ECF p. 162–165 (Pls.' Exs. L and M), showing that the
Philadelphia Police Department arrested plaintiffs, the warrant was issued by a Pennsylvania
state court judge.

According to Mr. Casselli, the Court of Common Pleas dismissed all charges against him and Mr. Love on January 14, 2013 due to lack of jurisdiction to prosecute a crime that occurred in a federal building.  Dkt. No. 97 at ECF p. 9 ¶ 12, p. 5 ¶ 24 (Pls.' Statement of Material Facts).  Plaintiffs do not provide any evidence of this judgment besides plaintiffs' testimony describing what the judge said at their hearing.

## STANDARD OF REVIEW

Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The party moving for summary judgment bears the burden of demonstrating that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Celotex, 477 U.S. at 322–23.  If the movant sustains its burden, the nonmovant must set forth facts demonstrating the existence of a genuine dispute.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  A fact is "material" if it might affect the outcome of the case under governing law.  Id.

> To establish "that a fact cannot be or is genuinely disputed," a party must:
>
> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  The adverse party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations or mere suspicions.  Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989).  The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against" the movant.  Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978) (citations and quotation marks omitted).

## DISCUSSION

Plaintiffs do not make a showing sufficient to establish the existence of the elements essential to their case on any of their claims.  Celotex Corp., 477 U.S. at 322.  Plaintiffs allege defendants are liable for "unreasonable and excessive force . . . [and] deliberate indifference to the need for medical treatment" under 42 U.S.C. § 1983, Am. Compl. ¶ 70; defendant, the City of Philadelphia, is liable for violating their constitutional rights, Am. Compl. ¶¶ 72, 73; and defendants Detective Gregory Holman and Officer Stephen Reeder are liable for "false arrest . . . unlawful search and seizure [and] false imprisonment" under § 1983 and for various claims under state law.  Am. Compl. ¶¶ 70, 76.  Plaintiffs present no support for their federal claims of excessive force, deliberate indifference to the need for treatment, or those against the City of Philadelphia.  They present insufficient support for their federal claims of false imprisonment against Detective Homan and Officer Reeder and for their various state law claims.  Therefore, I will grant summary judgment for defendants on all claims.

### I.       Claims of Denied Medical Treatment and Excessive Force

Plaintiffs present no evidence supporting their claims of deliberate indifference to the need for medical treatment or unreasonable and excessive force.  Presumably, Mr. Casselli's

experience in jail is the foundation for those claims.  Plaintiffs do not discuss this claim in their memorandum and neither of the individual defendants remaining in this action, Officer Reeder or Detective Holman, was involved in that incident.  Therefore I will grant defendants' motion for summary judgment on those claims.

## II.      Claims Against the City of Philadelphia

I will also grant summary judgment for the City of Philadelphia on all of plaintiffs' claims.  "When a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom."  Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir.1996), citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).  Plaintiffs present no evidence that the city had a policy, regulation, or officially adopted decision that violated plaintiffs' constitutional rights.

## III.     Federal Claims of False Arrest and False Imprisonment

Plaintiffs present insufficient support for a reasonable jury to find in their favor on their claims of false arrest and false imprisonment under § 1983.  False arrest and false imprisonment are "nearly identical claims" that may be "analyzed together."  Brockington v. City of Phila., 354 F. Supp. 2d 563, 570 n.8 (E.D. Pa. 2005), citing Gagliardi v. Lynn, 285 A.2d 109 (Pa. 1971).  They are actionable under § 1983 through the Fourth Amendment right to be free from unlawful seizure.  Albright v. Oliver, 510 U.S. 266, 274 (1994).  Where plaintiffs are arrested pursuant to a warrant, an investigating officer can be held liable for false arrest or false imprisonment under § 1983 only where:  (1) the officer "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;" and (2) "such statements or omissions are material, or necessary, to the finding of probable

cause." Wilson v. Russo, 212 F.3d 781, 786–87 (3d Cir. 2000), quoting Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997).

Plaintiffs do not present evidence that Detective Holman's warrant application contained falsehoods that were material to a finding of probable cause, that he omitted information that caused the warrant to be jurisdictionally invalid, or that Officer Reeder made material falsehoods in his 75-40 report. Therefore, I will grant summary judgment for defendants on these claims as well.

### A.   Detective Holman's Warrant Application

Plaintiffs have not shown that Detective Holman 1) omitted information with reckless disregard for the truth such that the omissions amounted to falsehoods, or 2) that the information, had it been included, would have had a material impact on the existence of probable cause. Rather, they point to omitted details and information Detective Holman had no duty to uncover. Therefore, I will grant summary judgment for defendants with respect to plaintiffs' claims for false arrest and false imprisonment against Detective Holman.

### 1.   Reckless Disregard for the Truth

Instead of showing that Detective Holman omitted information in his affidavit that amounted to falsehoods by acting with reckless disregard for the truth, plaintiffs show that he: A) omitted details and B) did not continue to investigate after he had found probable cause to arrest. An officer makes an omission with reckless disregard for the truth if he withholds evidence that "any reasonable person would have known … was the kind of thing the judge would wish to know." Wilson, 212 F.3d at 788 (internal alterations omitted), quoting United States v. Jacobs, 986 F.2d 1231, 1235 (8th Cir. 1993). In order that the reviewing magistrate can impartially evaluate the existence of probable cause, the officer must provide complete and true information.

> "The point of the Fourth Amendment . . . is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." . . . .  It follows that a police officer cannot make unilateral decisions about the materiality of information, or, after satisfying him or herself that probable cause exists, merely inform the magistrate or judge of inculpatory evidence.

Wilson, 212 F.3d at 787, quoting Johnson v. United States, 333 U.S. 10, 13–14 (1948).  Here, Detective Holman summarized the information he had gathered from his interviews about the June 27th incident.  He did not make "unilateral decisions about the materiality of information" and his conduct does not display reckless disregard for the truth.

A.    Omitted Details

Some of the omitted information plaintiffs point to is unnecessary detail and omitting it does not demonstrate reckless disregard for the truth.  Officers need not include every detail in an arrest warrant; judges only need relevant information.  Wilson, 212 F.3d at 787 ("We cannot demand that police officers relate the entire history of events leading up to a warrant application with every potentially evocative detail that would interest a novelist or gossip.").  Detective Holman is not liable for failing to include additional information that a reasonable person would not think a judge would wish to know.  Wilson, 212 F.3d at 788.

Plaintiffs point out that Detective Holman did not include Mr. McKeown's statement that the lock had always been broken on the filing cabinet plaintiffs accessed.  Dkt. No. 97 at ECF p. 43–44.  However, Detective Holman included little information about the lock and did not assert plaintiffs broke the lock.  Dkt. No. 94-13 (Affidavit of Probable Cause, Oct. 26, 2012).  Thus, Mr. McKeown's statement that the lock was broken prior to the incident is not something a

reasonable person would think that a judge would wish to know, given the overall unimportance of the lock in Detective Holman's affidavit.

Plaintiffs also argue Detective Holman acted with reckless disregard for the truth by not including Mr. McKeown's statement that plaintiffs had told him they would only retrieve their own files from the steward office. Dkt. No. 97 at ECF p. 56. However, Detective Holman included Mr. Reeves's retelling of Mr. Casselli's explanation—that "he did not take any grievance folders he only took football pools from Laurence love's [sic] cabinet." Dkt. No. 94-13. Therefore, Detective Holman reasonably concluded that a judge would not wish to hear this excuse repeated by another witness. These omitted details do not amount to a falsehood in Detective Holman's affidavit.

B.     Failure to Continue to Investigate

Plaintiffs argue Detective Holman's failure to uncover certain exculpatory information reveals a reckless disregard for the truth. They point to his failure to probe Ms. Ivey and Ms. Tillery, his failure to interview plaintiffs, and his potential bias toward current union management. None of these arguments succeeds.

A decision not to continue to gather information once probable cause exists is not a constitutional violation. "A negligent failure to investigate does not create liability. . . . Failure to investigate is considered in tandem with the strength or weakness of the probable cause evidence." Eckman v. Lancaster City, 742 F. Supp. 2d 638, 653 (E.D. Pa. 2010), aff'd, 515 F. App'x 93 (3d Cir. 2013), and aff'd, 529 F. App'x 185 (3d Cir. 2013). Where probable cause evidence exists, officers have no duty to continue to investigate. Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 790 (3d Cir. 2000). In Merkle, the investigating officer relied on one witness's account in which he described observing the plaintiff putting school art supplies in her

car and stating her intent to give the supplies to a community center.  Id.  The officer's decision not to interview other witnesses was not an unconstitutional omission.  Id. at n.9.  Rather, the officer "had every reason to believe a credible report from a school principal who witnessed the alleged crime.  This report alone sufficiently established probable cause.  [The defendant officer] was not required to undertake an exhaustive investigation in order to validate the probable cause that, in his mind, already existed."  Id. (citations omitted).  On the other hand, an officer can be liable for his failure to investigate "basic evidence" if he does not have a basis for probable cause.  Walker v. Spiller, No. 97-6720, 1998 WL 306540, at *6 (E.D. Pa. June 9, 1998), quoting Romero v. Fay, 45 F.3d 1472 (10th Cir. 1995).  "[T]he proper inquiry is whether 'the facts and circumstances *within the arresting officer's knowledge*' were sufficient to warrant a reasonable belief that the offense was committed."  Livingston v. Allegheny Cty., 400 F. App'x 659, 665 (3d Cir. 2010), quoting Merkle, 211 F.3d at 788, 789.

Plaintiffs argue that two facts undermined probable cause and should have alerted Detective Holman to the need to probe further into Ms. Ivey's and Ms. Tillery's accounts: First, their stories differed from Mr. McKeown's, Dkt. No. 97 at ECF p. 43; and second, Ms. Tillery's written account from June 27, 2012 (her "PPD form") revealed her intent to get plaintiffs in trouble "by any means necessary." Id. at 44–46; Dkt. No. 97 at ECF p. 143–45 (Pls.' Ex. F). Plaintiffs claim that as a result of his failure to adequately probe Ms. Ivey and Ms. Tillery's stories Detective Holman made a number of material omissions.[3]

---

[3] Plaintiffs argue he should have discovered specific facts about the documents plaintiffs allegedly took from the filing cabinet, Dkt. No. 97 at ECF p. 42, 49, information that the postal police and Postal Office of the Inspector General investigated the matter and made no findings of theft, id. at 46–47, the ongoing political tensions within the union, id. at 47, that grievance documents do not contain social security numbers, id. at 26, and Ms. Ivey's letter to Mr. McKeown that showed he allowed plaintiffs to enter the steward office and that Ms. Ivey was

Plaintiffs' arguments are unavailing because Detective Holman had probable cause based on the information within his knowledge.  The facts identified by plaintiffs would not have suggested to a reasonable officer that the witnesses' testimony was unreliable and the evidence for probable cause was weak.  First, Ms. Ivey's and Ms. Tillery's accounts differ only slightly from Mr. McKeown's.  Compare Dkt. No. 94-6 and Dkt. No 94-7 with Dkt. No. 94-8.  Second, there is no evidence that Detective Holman had Ms. Tillery's "PPD form."  See Dkt. No. 97 at ECF p. 23 (stating, without a reference to the record, that Detective Holman had this evidence).  Even if he had the form, it would not reveal to a reasonable officer that Ms. Tillery accused plaintiffs because of personal ill will toward them.  Rather, it reveals her frustration with plaintiffs' conduct.  Moreover, the PPD form would not necessarily have undermined Detective Holman's application for probable cause.  Its descriptions of Mr. Casselli's explanations for why he did not pick up the football pools before June 27, 2012 despite several opportunities to do so might actually have strengthened it.  Id.  In short, Detective Holman relied on evidence even stronger than the single eye-witness testimony in Merkle.  Because Detective Holman already had probable cause to arrest plaintiffs by virtue of his interviews with five witnesses, his ignorance of certain information did not violate plaintiffs' rights.

Plaintiffs also argue Detective Holman should have interviewed plaintiffs.  But police do not have a constitutional duty to investigate a defendant's protestations of innocence or to search for evidence of affirmative defenses prior to making an arrest.  See, e.g., Merkle, 211 F.3d at 790 n.8; Garcia v. Cnty. of Bucks, 155 F. Supp. 2d 259, 266 (E.D. Pa. 2001) ("[A]n arresting officer does not, of course, have to accept at face value an arrestee's claim of innocence or mistaken

---

not certain that the documents taken contained sensitive information, Dkt. No. 51 at ECF p. 51, 56.

identity").[4]  It is "neither uncommon, nor a barrier to probable cause" for an officer to decline to interview an arrestee and ascertain his version of the events prior to making an arrest.  Anderson v. Goga, No. 11-528, 2013 WL 3242445, at *3 (W.D. Pa. June 25, 2013) ("[An] officer is under no obligation to give any credence to a suspect's story"); Forde v. Home Depot, No. 11-5823, 2011 WL 6372090, at *4 (E.D. Pa. Dec. 20, 2011).  A reasonable, competent officer may conclude that a putative defendant's protestations of innocence do not negate the determination of probable cause because "the protestations of innocence by an arrestee are so common as to be virtually a matter of course."  Anderson, 2013 WL 3242445, at *3, citing Pearson v. Lorcancaitis, No. 09-1641, 2012 WL 162355 at *10 (D. Ct. Jan. 19, 2012) (further citations omitted).

Detective Holman's decision not to interview plaintiffs is not an omission that amounts to reckless disregard for the truth.  Plaintiffs' argument that he should have interviewed them in order to "develop…easily obtainable exculpatory evidence," Dkt. No. 97 at ECF pp. 41, 49, asks Detective Holman to go beyond what is required for an adequate investigation.  Anderson, 2013 WL 3242445, at *3.  Detective Holman may reasonably have concluded that plaintiffs would have provided protestations of innocence that would not have negated the determination of probable cause.  Id.

---

[4] See also Craig v. Collins, No. 13-1873, 2013 WL 5271521 at *7 (E.D. Pa. Sept. 17, 2013) ("[A] plaintiff cannot succeed by merely showing that the police could have done a better job of investigating or failed to exhaust all leads after they had enough information to establish probable cause") and Carter v. City of Phila., No. 97-4499, 2000 WL 1578495, at *5 (E.D. Pa Oct. 13, 2000), citing Morrison v. United States, 491 F.2d 344, 346 (8th Cir. 1974) (holding that an officer's failure to investigate did not negate probable cause for arrest.  "There is no constitutional or statutory requirement that before an arrest can be made the officer must conduct a trial").

Finally, plaintiffs cannot rely on bare conjectures about Detective Holman's motivations in applying for the warrant.  At summary judgment, the adverse party must raise "more than a mere scintilla of evidence in its favor."  Williams, 891 F.2d at 460.  Plaintiffs cannot survive by relying on unsupported assertions, conclusory allegations or mere suspicions.  Id.  Plaintiffs guess that Detective Holman knew someone connected to the union and was doing this person a favor in seeking plaintiffs' arrest.  Dkt. No. 97 at ECF p. 56–57.  But plaintiffs provide no evidence to support this claim.

There is no dispute as to any material fact relating to Detective Holman's investigation and affidavit.  Detective Holman did not make any omissions that amounted to falsehoods in his warrant application and is entitled to summary judgment on plaintiffs' constitutional claims under § 1983.

2.      Materiality

My finding that Detective Holman did not create any falsehoods in his warrant application obviates the need to assess materiality.  Wilson, 212 F.3d at 786–87 (requiring plaintiff to prove both that defendant made an omission amounting to a falsehood and that the omission was material).  However, even if I had found otherwise, plaintiffs would not be able to establish materiality because an affidavit including all the omitted information that plaintiff identifies would still have established probable cause to arrest plaintiffs.

An omission is material if a corrected warrant application, made by "excis[ing] the offending inaccuracies and insert[ing] the facts recklessly omitted . . . would establish probable cause."  Wilson, 212 F.3d at 789, citing Sherwood, 114 F.3d at 399; see also Cummings v. City of Phila., 137 F. App'x 504, 506 (3d Cir. 2005).  In Cummings, the officer's omission of his inability to locate shells at the site of an alleged shooting and of his finding that a nearby

crossing guard was unaware of the shooting was immaterial where an eyewitness positively

identified the suspect.  137 F.App'x. at 506.  The "exculpatory facts [were] insufficient to vitiate

the probable cause established by the inculpatory evidence."  Id.  Generally, police may rely on

the statements of a victim or eyewitness to a crime when making a probable cause determination

as "it is well-established that when an officer has received . . . information from some person—

normally the putative victim or an eyewitness—who it seems reasonable to believe is telling the

truth, he has probable cause."  United States v. Richards, No. 08-37, 2008 WL 3874302 at *2

(D.V.I. Aug. 15, 2008), citing Spiegel v. Cortese, 196 F.3d 171, 724 (7th Cir. 1999) (additional

citations omitted).

Any omissions Detective Holman made were immaterial.  Probable cause would have

existed in this case even had the judge known the facts plaintiffs point to: e.g., that the lock had

been broken before the date in question, that there were political tensions between plaintiffs and

the union president and that plaintiffs had an innocent explanation for their suspicious conduct.

Dkt. No. 94 at ECF p. 19-36.  Detective Holman could rely on Mr. Keenan's statements as he

was an eyewitness to the alleged crime.  Richards, No. 08-37, 2008 WL 3874302 at *2.

Moreover, it was reasonable for Detective Holman to believe Mr. Keenan was telling the truth in

his interview as other witnesses corroborated elements of his story and there was no apparent

motive for him to lie.  Dkt. No. 94-6; Dkt. No. 94-7.  The exculpatory facts plaintiffs identify are

insufficient to outweigh a corroborated eyewitness statement.  Cummings, 137 F.App'x. at 506.

Additionally, the omitted evidence plaintiffs identify hardly changes the weight of the evidence

against them.  Much of it is duplicative of other evidence that Detective Holman included in his

affidavit or largely irrelevant to a finding of probable cause.

16

Because plaintiffs have not shown that Detective Holman made any material omissions in his warrant application I will grant summary judgment for Detective Holman on plaintiffs' claims of false arrest and false imprisonment under § 1983.

### B.    Unlawful Arrest for Lack of Jurisdiction

Plaintiffs argue their detention was unlawful because it occurred pursuant to a warrant issued without jurisdiction.  Dkt. No. 97 at ECF p. 52–53.  Because Detective Holman did not effect the arrest, but merely applied for the warrant, I will apply the same standard as set forth above: plaintiffs must show that Detective Holman caused the arrest's illegality by 1) omitting information so as to create a falsehood in his affidavit, and 2) that this falsehood was "material, or necessary, to the finding of probable cause."  Wilson, 212 F.3d at 786–87.  Although plaintiffs show that Detective Holman omitted from his affidavit that he was escorted off the premises at Lindbergh for lack of jurisdiction, Dkt. No. 97 at ECF p. 49, this does not amount to a falsehood because Detective Holman included other jurisdictionally relevant information.  Moreover, this omission was not material because the affidavit was already supported by probable cause to arrest for a violation of federal law, even if not for a violation of state law.

The evidence does not support a finding that Detective Holman made a falsehood through omissions in his affidavit with respect to jurisdiction.  Detective Holman testified that he did not know that jurisdiction was the reason he was escorted off the premises.  Holman Dep. at 26:14–27:2.  A reasonable person not well versed in complex questions of federal enclave jurisdiction would not know a judge would wish to know that he was escorted off the premises as it does not relate to the occurrence he was investigating.  Wilson, 212 F.3d at 788.  Moreover, Detective Holman did not "merely inform the magistrate or judge of inculpatory evidence" regarding jurisdiction, id. at 787; rather, he included that the alleged crime occurred at the U.S. Postal

17

Service plant at 7500 Lindbergh Boulevard.  Dkt. No. 94-15 at ECF p. 2.  The type of facility alone should have been sufficient to alert a judge to the jurisdictional problem.  Com. v. Mangum, 332 A.2d 467, 468 (Pa. Super. 1974) ("State courts have no jurisdiction over crimes committed in most federal buildings.").  Thus, even if plaintiffs' arrest was unlawful due to lack of jurisdiction,[5] Detective Holman did not cause the jurisdictional mistake by an omission that amounted to falsehood.

Moreover, any omissions in the affidavit were not material because the affidavit was supported by probable cause.  Even if the territory was outside Pennsylvania's jurisdiction and therefore not governed by state law, Detective Holman still had probable cause because a

---

[5] Plaintiffs suggest that the Lindbergh facility was ceded to the federal government and therefore the warrant pursuant to which plaintiffs were arrested was invalid because it was issued for alleged crimes committed outside the issuing judge's jurisdiction.  Dkt. No. 97 at ECF p. 52–53.  But plaintiffs do not present admissible evidence that the Lindbergh postal facility in which plaintiffs committed the alleged crime was ceded to the federal government.  Mangum, 332 A.2d at 468 (noting that "we cannot answer" the question of whether jurisdiction over a post office had been ceded to the federal government because "we cannot determine from the record whether the post office in which appellant was arrested was 'exclusively owned by the general government, and used for its purposes,' or otherwise met the conditions of the Act [of June 13, 1883]"), citing 74 Pa. Cons. Stat. § 1.

The Court of Appeals for the Third Circuit has not addressed the question of whether the execution of an arrest warrant that is invalid only because of lack of jurisdiction violates the suspect's Fourth Amendment rights.  The Courts of Appeals for the Ninth and Tenth Circuits have addressed this question with regards to search warrants.  Bishop Paiute Tribe v. Cty. of Inyo, 291 F.3d 549, 568 (9th Cir. 2002) (holding that the district attorney and sheriff violated the Fourth Amendment when they executed a search warrant to seize property outside their jurisdiction), vacated sub nom. Inyo Cty., Cal. v. Paiute-Shoshone Indians of the Bishop Cmty. of the Bishop Colony, 538 U.S. 701 (2003) (vacating on other grounds); United States v. Baker, 894 F.2d 1144, 1147–48 (10th Cir.1990) (holding search warrants "issued without jurisdiction are void from their inception" and noting that cases involving a search warrant "that was essentially void ab initio [for lack of issuing authority's jurisdiction], appears to fall somewhere between the two poles occupied by the defective-warrant [for lack of probable cause] and absent-warrant cases" and holding that executing a search warrant issued without jurisdiction over Indian territory violated suspect's Fourth Amendment rights).  I need not address that issue here because neither of the individual defendants remaining in this case—Officer Reeder and Detective Holman—executed the warrant.

reasonable person would be warranted in believing plaintiffs committed a federal crime.

Probable cause to arrest is present when "the facts and circumstances within the arresting

officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an

offense has been or is being committed by the person to be arrested."  Orsatti v. N.J. State Police,

71 F.3d 480, 483 (3d Cir. 1995).  Although Pennsylvania criminal law would not apply to

plaintiffs' conduct,[6] would-be violations of Pennsylvania law are violations of federal law under

18 U.S.C. § 13(a).  United States v. Ulrich, 444 F. App'x 548, 550 n.1 (3d Cir. 2011) ("Conduct

on United States property that would violate the law of the state in which the property is situated

if committed within the state's jurisdiction is punishable as a violation of federal law pursuant to

18 U.S.C. § 13(a).  United States Post Offices are among the classes of United States property to

which 18 U.S.C. § 13 applies."), citing 18 U.S.C. § 7(3).

Detective Holman's affidavit established probable cause that plaintiffs violated federal

law pursuant to 18 U.S.C. § 13(a).  Because a reasonable person knowing the facts that Detective

Holman knew would be warranted in believing plaintiffs violated 18 U.S.C. § 13(a) by

committing theft under Pennsylvania law, Detective Holman had probable cause to arrest

plaintiffs.  Thus, even if the resulting warrant was invalid for lack of jurisdiction, he is not liable

for false imprisonment as a result of signing the affidavit.

### C.  Officer Reeder

Defendants move for summary judgment on plaintiffs' claims of false arrest and false

imprisonment in violation of 42 U.S.C. § 1983 against Officer Reeder.  Because Officer Reeder

---

[6] Federal, not state, law governs Pennsylvania properties ceded to the federal government.  Act of June 13, 1883, 74 Pa. Cons. Stat. § 1; Mangum, 332 A.2d at 468 ("Since the Act of 1883 . . . cedes the jurisdiction of this state to the United States, Pennsylvania's criminal statutes do not apply to a ceded area any more than to a sister state.") (alterations and quotations omitted).

was not involved in the warrant application, I will grant defendants' motion for summary

judgment with respect to plaintiffs' claims against him.

Plaintiffs argue Officer Reeder is liable for violating their constitutional rights because he

did not interview plaintiffs in preparing his 75-49 report, omitted from the report that neither Ms.

Ivey nor Ms. Tillery "could identify precisely what was allegedly stolen or who the alleged

victim(s) was," and did not mention in his 75-49 report that the local police did not have

jurisdiction over crimes committed on federal postal property.  Plaintiffs argue that these

omissions "substantially contributed" to plaintiffs' prosecutions.  Dkt. No. 97 at ECF p. 54.

No reasonable jury could conclude that Officer Reeder "created a falsehood in applying

for a warrant" because he did not apply for the warrant nor did Detective Holman rely on his 75-

49 report in applying for the warrant.  Officer Reeder merely responded to radio call and filled

out the initial incident report.  His report is cursory because it is an initial response, not an

application for probable cause.  Even if Officer Reeder had made an omission that amounted to a

false statement in his 75-49 report—which the evidence does not support—Detective Holman

did not rely on the report in filling out his affidavit of probable cause; rather, he conducted five

interviews which were the basis of his affidavit.  Officer Reader is not responsible for Detective

Holman's warrant application or the resulting arrest.  As a result, I will grant defendants' motion

with respect to all federal claims against Officer Reeder.

**IV.     State Law Claims**

Defendants also move for summary judgment on plaintiffs' state law tort claims of

assault, battery, defamation, false light privacy, malicious prosecution and false imprisonment.

Dkt. No. 94 at ECF p. 4.  Defendants present argument only as to plaintiffs' claims of false

imprisonment on the basis that "discovery has revealed that [plaintiffs] cannot possibly proceed"

on the other claims.  Id.  Because plaintiffs have not shown the existence of a genuine dispute on

any material fact and defendants are entitled to judgment as a matter of law, I will grant

defendants' motion for summary judgment on all state law claims.

In Pennsylvania, governmental employees are entitled to immunity from tort liability

unless their actions constitute "a crime, actual fraud, actual malice or willful misconduct." 42 Pa.

Cons. Stat. §§ 8545, 8550.  Plaintiffs do not present any evidence supporting their state law

claims of assault, battery,[7] defamation,[8] or false light privacy,[9] much less evidence of actual

malice or willful misconduct.  I will grant summary judgment for defendants on those state law

claims.

Defendants are also entitled to judgment as a matter of law on plaintiffs' claim of false

imprisonment.  To establish the tort of false imprisonment under Pennsylvania law, plaintiffs

must demonstrate that the defendant detained them and the detention was unlawful.  Renk, 641

A.2d at 293; Kintzel v. Kleeman, 965 F. Supp. 2d 601, 608 (M.D. Pa. 2013).  Strickland v. Univ.

of Scranton, 700 A.2d 979, 984 (Pa. Super. Ct. 1997) ("An action for false arrest[[10]] requires that

---

[7] Plaintiffs do not present evidence that defendants intended to cause bodily harm or fear of such harm or made any offensive contact with plaintiffs.  Renk v. City of Pittsburgh, 641 A.2d 289, 294-95 (Pa. 1994) (defining assault and battery under Pennsylvania law).

[8] Plaintiffs do not identify what communication is allegedly defamatory and cite no evidence to establish the elements of defamation.  Lawson v. Pennsylvania SPCA, 124 F. Supp. 3d 394, 410 (E.D. Pa. 2015).

[9] Plaintiffs do not present evidence that defendants acted with malice.  "The tort of placing the plaintiff in a false light consists of publication of facts about plaintiff by defendant which places plaintiff in a false light, the false light is objectionable to reasonable people, and malice on the part of the defendant where the published matter is in the public interest." Commonwealth v. Hayes, 414 A.2d 318, 325 n.18 (Pa. 1980); Lawson, 124 F. Supp. 3d at 410.

[10] False arrest and false imprisonment are effectively the same claim under Pennsylvania law.  See, e.g., Manley v. Fitzgerald, 997 A.2d 1235, 1241 (Pa. Commw. Ct. 2010) ("The

the process used for the arrest was void on its face or that the issuing tribunal was without

jurisdiction . . . ."). A detention supported by probable cause is not unlawful. Russoli v.

Salisbury Twp., 126 F. Supp. 2d 821, 869–70 (E.D. Pa. Oct. 20, 2000). "Pennsylvania state law

false arrest claims and federal constitutional false arrest claims are co-extensive as to both

elements of proof and elements of damages." Id. at 869. As described above, plaintiffs have not

presented sufficient evidence for a reasonable jury to conclude that Detective Holman or Officer

Reeder caused plaintiffs to be falsely arrested or imprisoned. Therefore, I will grant summary

judgment for defendants on plaintiffs' state law claim of false imprisonment.

 Plaintiffs also do not present sufficient evidence supporting their claim for malicious

prosecution. To support a claim for malicious prosecution, plaintiffs must present evidence such

that a reasonable jury could find: "(1) the defendants initiated a criminal proceeding; (2) the

proceeding ended in plaintiffs favor, (3) the defendants initiated the proceeding without probable

cause to arrest and, (4) the defendants acted with actual malicious purpose." Patterson v. Sch.

Dist. Of Phila., No. 99-4792, 2000 WL 1020332, at *5 (E.D. Pa. July 19, 2000). "Generally, it is

the prosecutor, not the police officer, who is responsible for initiating a proceeding against a

defendant. . . . An officer may, however, be considered to have initiated a criminal proceeding if

he or she knowingly provided false information to the prosecutor or otherwise interfered with the

prosecutor's informed discretion." Gatter v. Zappile, 67 F. Supp. 2d 515, 521 (E.D. Pa. 1999)

(citations omitted), aff'd, 225 F.3d 648 (3d Cir. 2000). Because I find that a reasonable jury

could not conclude that either Detective Holman or Officer Reeder provided false information or

made reckless omissions in their investigation, see supra, they are not liable for malicious

---

elements of false arrest/false imprisonment are: (1) the detention of another person (2) that is
unlawful.").

prosecution.  Even if I were to find otherwise, plaintiff has not shown any evidence that defendants acted with malicious purpose.  Therefore, I will grant summary judgment for defendants on plaintiffs' claims of malicious prosecution.

Having reviewed the evidence, I find that defendants have shown that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law on all of plaintiffs' claims.

An appropriate Order follows.